[No. 38635-6-II.   Division Two.   March 2, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID LEE BROSIUS, *Appellant*.

*Jennifer L. Dobson*; and *Dana M. Lind* (of *Nielsen Broman & Koch PLLC*), for appellant.

*L. Michael Golden, Prosecuting Attorney*, and *James C. Powers, Deputy*, for respondent.

¶1  HOUGHTON, J. — David Brosius appeals his conviction for one count of failure to register as a sex offender. He claims an unconstitutional delegation of authority to county sheriffs in classifying the risk level of convicted sex offenders and a deficiency in the charging document.[1] We affirm.

---

[1] Brosius also assigned error to the trial court's failure to enter written findings of fact and conclusions of law. The trial court has since entered those findings and

## FACTS

¶2 Lewis County Sheriff's Detective Bradford Borden oversees the sex offender registration and reporting processes for that county, and he classifies the risk level of convicted sex offenders living there. On April 7, 2004, he classified Brosius as a level III sex offender.[2] Brosius, a juvenile at that time, was serving a suspended sentence under a special sex offender disposition alternative.

¶3 Shortly thereafter, a sentencing court revoked Brosius' suspended sentence based on his new adjudication of guilt for unlawful imprisonment with sexual motivation. The sentencing court placed him in Juvenile Rehabilitation Administration (JRA) custody.

¶4 JRA released Brosius from custody in June 2006. Before his release, JRA assessed his risk level using the Washington State Sex Offender Risk Level Classification (assessment tool).[3] Due to his new crime, Brosius received a score of 54, which led JRA to recommend his classification as a level III offender following his release. Borden followed the JRA recommendation.

¶5 RCW 9A.44.130(7) requires registered sex offenders with a fixed residence and a risk level classification of II or III to report in person to the sheriff of his or her county of registration every 90 days. The statute allows the county sheriff to specify the reporting date. RCW 9A.44.130(7).

conclusions, and we do not address this issue further as he fails to claim prejudice from the late filing.

[2] Borden classified Brosius using the Washington State Sex Offender Risk Level Classification assessment tool, which Borden had used since 2001. Brosius' score of 49 led Borden to classify Brosius as a level III offender. *See infra* note 3.

[3] The Department of Corrections developed the assessment tool, which uses 21 questions, primarily regarding prior criminal history, to calculate a numeric score. The assessment tool then requires a determination of the existence of certain designated risk considerations that contribute to a higher risk level classification. For example, a sex offender with a score of 46 or less with no risk considerations is classified as a level I sex offender. A sex offender with a score of less than 46, but with one to two risk considerations, is classified as a level II offender. An offender with a score of 47 or higher is classified as a level III offender.

After Brosius, now an adult, failed to report as required, the State charged him with one count of failure to register as a sex offender. The State filed an amended information that read in pertinent part,

> By this Amended Information the Prosecuting Attorney for Lewis County accuses the defendant of the crime of FAILURE TO REGISTER AS A SEX OFFENDER, which is a violation of RCW 9A.44.130(7) . . . in that defendant on or about December 20, 2006, in Lewis County, Washington, then and there being a person required to register as a sex offender in Lewis County, did knowingly and unlawfully fail to comply with the statutory registration requirements by failing to report on the required days for the 90 days reporting requirement as required by RCW 9A.44.130(7).

Clerk's Papers at 103.

¶6 After Brosius waived his right to a jury trial, the trial court found him guilty as charged. He appeals.

## ANALYSIS

### SEPARATION OF POWERS

¶7 Citing *State v. Ramos*, 149 Wn. App. 266, 202 P.3d 383 (2009), Brosius first contends that the county sheriff's classification of him as a level III sex offender violates separation of powers principles. As such, he argues, the county sheriff's classification is unconstitutional.

¶8 We review a statute's constitutionality de novo. *State v. Abrams*, 163 Wn.2d 277, 282, 178 P.3d 1021 (2008). We presume the statute's constitutionality and the party challenging it must prove its unconstitutionality beyond a reasonable doubt. *Abrams*, 163 Wn.2d at 282. An "as applied" challenge to a statute's constitutionality consists of a party's claim that the statute's application to the specific context of the party's actions or intended actions is unconstitutional. *City of Redmond v. Moore*, 151 Wn.2d 664, 668-69, 91 P.3d 875 (2004). A decision that a statute is unconstitutional as applied prohibits future application of

the statute in a similar context, but it does not totally invalidate the statute. *Moore,* 151 Wn.2d at 669.

¶9 The legislature holds responsibility for defining the elements of a crime. *State v. Evans,* 154 Wn.2d 438, 447 n.2, 114 P.3d 627 (2005); *State v. Wadsworth,* 139 Wn.2d 724, 734, 991 P.2d 80 (2000). Abdication or transfer of the legislative function to other governmental branches is unconstitutional. *Brower v. State,* 137 Wn.2d 44, 54, 969 P.2d 42 (1998). Such a delegation is proper, however, when (1) the legislature provides standards to indicate what is to be done and designates the agency to accomplish it and (2) procedural safeguards exist to control arbitrary administrative action and abuse of discretionary power. *State v. Simmons,* 152 Wn.2d 450, 455, 98 P.3d 789 (2004).

¶10 In *Ramos,* we held that the legislature's delegation of authority under RCW 4.24.550(6)(b), which allows the county sheriff to assign risk classifications to sex offenders, violates separation of powers principles.[4] 149 Wn. App. at 276. We reasoned that the statute, which requires the county sheriff to classify offenders with a risk level II or III without any guiding standards, definitions, or methodologies, allows the county sheriff to define an element essential to a violation of RCW 9A.44.130(7) requirements. *Ramos,* 149 Wn. App. at 271-72, 275-76. But we premised our holding on the fact that no entity other than the county sheriff had classified Ramos, and we explicitly stated that we were not reviewing risk classifications by other state agencies. *Ramos,* 149 Wn. App. at 268-69, 273 n.5, 276 n.10.

¶11 Here, JRA, a subdivision of the Washington State Department of Social and Health Services (DSHS), assessed Brosius before his release from custody and recommended a level III offender classification. Borden followed this recommendation. Thus, even under our analysis in

---

[4] RCW 4.24.550(6)(b) provides, "Local law enforcement agencies that disseminate information pursuant to this section shall . . . assign risk level classifications to all offenders about whom information will be disseminated."

*Ramos*, the statute is constitutional as applied to these facts.

¶12 First, the legislature provided adequate standards to guide DSHS in classifying a sex offender's risk level. RCW 13.40.217(3) requires DSHS to classify juvenile sex offenders based on whether their "risk of reoffense" is "low," "moderate," or "high."[5] Furthermore, RCW 4.24.5502 required DSHS, the Department of Corrections (DOC), and the Indeterminate Sentence Review Board to develop jointly "consistent standards for classifying sex offenders into risk levels I, II, and III." RCW 72.09.345(3) specifies a wide range of materials to be considered by DOC's End of Sentence Review Committee (ESRC) when assigning risk levels to sex offenders.[6] Likewise, DSHS would have access to the same sources of information regarding a juvenile sex offender in JRA custody. Given RCW 4.24.5502's requirement that DOC and DSHS develop consistent risk level assessment standards, the legislature intended that JRA consider these same sources of information when making its assessments. Therefore, the legislature provided adequate standards for guiding DSHS and JRA in classifying a sex offender's risk level.

¶13 Second, we consider whether adequate procedural safeguards exist to prevent abuse of administrative discre-

---

[5] RCW 13.40.217(3) provides:

For the purposes of this section, the department shall classify as risk level I those offenders whose risk assessments indicate a low risk of reoffense within the community at large. The department shall classify as risk level II those offenders whose risk assessments indicate a moderate risk of reoffense within the community at large. The department shall classify as risk level III those offenders whose risk assessments indicate a high risk of reoffense within the community at large.

[6] RCW 72.09.345(3) provides in relevant part:

Notwithstanding any other provision of law, the committee shall have access to all relevant records and information in the possession of public agencies relating to the offenders under review, including police reports; prosecutors' statements of probable cause; presentence investigations and reports; complete judgments and sentences; current classification referrals; criminal history summaries; violation and disciplinary reports; all psychological evaluations and psychiatric hospital reports; sex offender treatment program reports; and juvenile records.

tion. Again, RCW 4.24.5502 required DSHS and DOC to develop a consistent approach to classifying a sex offender's risk level. Furthermore, both JRA and Borden used the assessment tool DOC developed to assess and classify Brosius. Using numeric scoring in response to identical questions and designated risk considerations minimized subjective, arbitrary considerations in classifying Brosius' risk level.[7] Additionally, RCW 13.40.217(2) requires DSHS, when it classifies a sex offender as level II or III, to specify the underlying reasons for that classification. Therefore, adequate procedural safeguards exist under these facts. Accordingly, we hold that the county sheriff's classification of Brosius' risk level does not violate separation of powers principles because it is constitutional as applied here.

SUFFICIENCY OF INFORMATION

¶14 Brosius further contends that the charging information was constitutionally deficient. He argues that it failed to include the essential element of his classification as a level III sex offender.

¶15 When a defendant challenges the sufficiency of the charging information for the first time on appeal, we liberally construe the document in favor of its validity. *State v. Kjorsvik*, 117 Wn.2d 93, 105-06, 812 P.2d 86 (1991). We consider (1) whether the necessary elements appear in any form, or can be found by fair construction, in the charging document and, if so, (2) whether the defendant nonetheless suffered actual prejudice as a result of the inartful, vague, or ambiguous charging language. *Kjorsvik*, 117 Wn.2d at 105-06. We read words in a charging document as a whole, construing them according to common sense and as includ-

---

[7] Brosius also asserts that because classifications by other state agencies are nonbinding on the county sheriff, his JRA classification on his release is irrelevant to the separation of powers question. Although RCW 4.24.550(6)(b) requires the county sheriff only to review risk assessments made by other state agencies, RCW 4.24.550(10) requires the county sheriff to submit the underlying reasons for classifying a sex offender's risk level differently from the classification assigned by DSHS or ESRC.

ing facts which are necessarily implied. *Kjorsvik*, 117 Wn.2d at 109.

¶16 Here, the charging information did not expressly state that Brosius had a level II or III risk classification. But it did state that he failed to report during the 90-day period required by RCW 9A.44.130(7). That he had a level II or III classification was necessarily implied because only level II or III sex offenders are required to report under RCW 9A.44.130(7). Furthermore, he fails to claim any prejudice resulting from the information's language. Therefore, the charging information provided sufficient notice of the element of Brosius' risk level classification.[8]

¶17 Affirmed.

VAN DEREN, C.J., and PENOYAR, J., concur.

---

[8] Division One recently addressed a similar argument and held that RCW 9A.44.130(11)(a) created the only crime under the sex offender registration statutes, whose elements consisted of (1) knowingly (2) failing to register. *State v. Peterson*, 145 Wn. App. 672, 677-78, 186 P.3d 1179 (2008). Our Supreme Court granted review of the case, *State v. Peterson*, 165 Wn.2d 1027, 203 P.3d 379 (2009), and heard oral argument on January 21, 2010. Here, the information alleged that Brosius knowingly failed to register as a sex offender. Thus, the information is sufficient under *Peterson*. Because neither that case nor *Ramos* compel different results, we do not address any possible conflict between the holdings in those cases.