27 P.3d 228 (2001)
107 Wash.App. 215
STATE of Washington, Respondent,
v.
Paul MARKO, Appellant.
No. 25322-4-II.
Court of Appeals of Washington, Division 2.
July 13, 2001.
*229 Mary Katherine Young High, Tacoma, Court Appointed, for Appellant.
John Christopher Hillman, Pierce County Deputy Pros. Atty., Tacoma, for Respondent.
BRIDGEWATER, J.
Paul Marko appeals his conviction on two counts of intimidating a witness. Affirming, we hold that when a jury instruction defines a term, i.e., "threat," the definitions do not create additional means of committing the crime; thus, in such a case, the defendant is not entitled to a unanimity instruction regarding the means of committing the crime. We also hold that when a defendant is apprehended for robbery, is detained by citizens for ninety minutes until the police arrive, and continuously threatens the citizens, the defendant is not entitled to a unanimity instruction because his acts form a continuing course of criminal conduct, not multiple acts.
Paul Marko attempted to rob a gas station. The owners and several customers subdued him and called the police. It took ninety minutes for the police to arrive.
Marko made several threatening statements to the two station owners who restrained him. He told the men that either he or his friends would return and blow them up, that he knew them and would come back and shoot them, that he would get even, and that he would sue them. He repeatedly asked to be released. Marko repeated his comments throughout the entire ninety minutes. Marko was charged and convicted of one count of second degree robbery and two counts of intimidating a witness (i.e., intimidating both station owners).

I. Alternative Means
There are several means of intimidating a witness:
(1) A person is guilty of intimidating a witness if a person, by use of a threat against a current or prospective witness, attempts to:
(a) Influence the testimony of that person;
*230 (b) Induce that person to elude legal process summoning him or her to testify;
(c) Induce that person to absent himself or herself from such proceedings; or
(d) Induce that person not to report the information relevant to a criminal investigation or ... not to have the crime ... prosecuted, or not to give truthful or complete information relevant to a criminal investigation[.]
RCW 9A.72.110(1)(a)-(d). The State charged Marko with, and the jury was instructed on, the means under RCW 9A.72.110(1)(d). CP 9-10. The means is not the subject of the appeal; rather it is the word "threat."
"Threat" means: "To communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time[.]" RCW 9A.72.110(3)(a)(i). "Threat" is also defined in RCW 9A.04.110(25).[1] The jury instructions included this list of ten definitions of "threat" under RCW 9A.04.110(25) and the definition under RCW 9A.72.110(3)(a)(i).
Marko argues that the definition of "threat" under RCW 9A.04.110(25) creates ten alternative means of intimidating a witness "by way of alternative means of threatening." Br. of Appellant at 7. He asserts that he is entitled to a jury unanimity instruction under State v. Kinchen, 92 Wash. App. 442, 963 P.2d 928 (1998), and because there is not sufficient evidence to support each alternative means, he is entitled to dismissal under State v. Ortega-Martinez, 124 Wash.2d 702, 881 P.2d 231 (1994). We disagree.
Several decisions by Washington courts have refuted such an "additional alternative means" or alternative "`means within means'" argument where a statute defining an element of a crime is at issue. State v. Strohm, 75 Wash.App. 301, 309, 879 P.2d 962 (1994), review denied, 126 Wash.2d 1002, 891 P.2d 37 (1995).
State v. Garvin, a case directly on point, analyzed the precise definitional statute applicable here; the court found that "[s]econd degree extortion pursuant to RCW 9A.56.130 is extortion committed by means of a `threat' which is defined by RCW 9A.04.110(25)(d) through (j)[.]" State v. Garvin, 28 Wash.App. 82, 85, 621 P.2d 215 (1980), review denied, 95 Wash.2d 1017 (1981). The Garvin court went on to state that "[b]y defining `[t]hreat' the legislature was not creating alternative elements to, but merely defining an element of, the crime." Garvin, 28 Wash.App. at 85, 621 P.2d 215.
Similarly, in State v. Laico, the defendant was charged with first degree assault under RCW 9A.36.011(1)(c).[2]State v. Laico, 97 Wash.App. 759, 987 P.2d 638 (1999). To convict, the State had to prove that the victim suffered "great bodily harm." The three alternative definitions of "great bodily harm" *231 in RCW 9A.04.110(4)(c)[3] did not create alternative means of committing first degree assault. Laico, 97 Wash.App. at 762, 987 P.2d 638. The Laico court held, "the definition of `great bodily harm' does not add elements to the first degree assault statute, but rather is intended to provide understanding." Laico, 97 Wash.App. at 764, 987 P.2d 638.
Under Garvin and Laico, the definition of "threat" in RCW 9A.04.110(25) is strictly definitional and does not create additional means of committing the crime of intimidating a witness. In describing the various kinds of threats, the legislature was not creating additional elements to, but merely defining an element of, a potential crime. Where a "definition statute states methods of committing a crime in the disjunctive" it "does not mean that the definition creates alternative means of committing the crime." Laico, 97 Wash.App. at 762, 987 P.2d 638.
We agree with these Division One authorities, as their reasoning and holdings are sound. The definition of "threat" did not create additional means of committing the crime.

II. Jury Unanimity in Multiple Acts Cases
Marko also contends that this is a multiple acts case and he is entitled to have jury unanimity as to which distinct act established the crime. Where a defendant is charged with multiple acts and any one of them could constitute the crime charged, the jury must be unanimous as to which act constituted the crime, otherwise there is constitutional error. State v. Kitchen, 110 Wash.2d 403, 411, 756 P.2d 105 (1988). There are two ways to ensure jury unanimity in multiple acts cases. The State may elect the act on which it will rely for conviction or the trial court must instruct the jury that all of them must agree that the same act has been proved beyond a reasonable doubt. State v. Petrich, 101 Wash.2d 566, 570, 572, 683 P.2d 173 (1984).
Jury unanimity is not required where the defendant's acts form a continuing course of criminal conduct. State v. Crane, 116 Wash.2d 315, 330, 804 P.2d 10 (no unanimity instruction required where multiple assaults during two hour period resulted in child's death) (C.J., Dore dissenting), cert. denied, 501 U.S. 1237, 111 S.Ct. 2867, 115 L.Ed.2d 1033 (1991); see also Petrich, 101 Wash.2d at 568-71, 683 P.2d 173 (unanimity instruction required where victim described multiple separate incidents of sexual contact over period of more than one year). Instead, the jury must agree that the conduct occurred. Crane, 116 Wash.2d at 330, 804 P.2d 10.
The defendant's actions must be evaluated in a "commonsense manner" to determine whether it forms one continuing offense. Petrich, 101 Wash.2d at 571, 683 P.2d 173. Factors in this determination include whether the acts occurred in a "separate time frame" or "identifying place." Petrich, 101 Wash.2d at 571, 683 P.2d 173; see also Petrich, 101 Wash.2d at 571, 683 P.2d 173 (citing People v. Mota, 115 Cal.App.3d 227, 171 Cal.Rptr. 212 (1981) (repeated gang rape of victim over a several hour period held to be one continuing offense as to each defendant)).
Marko claims that his statements created multiple acts that could form the basis for the crime of intimidating a witness. He argues that his statements were not a continuing act because the incident lasted ninety minutes, he directed his statements at different people, and his statements had distinctly different purposessome were aimed at securing his release from a painful and humiliating hold, others at threatening property damage.
Marko's argument fails. Marko directed his statements to the two station owners in one continuous stream throughout the ninety-minute episode. Under the Petrich common sense approach, his actions formed a continuing criminal act. No unanimity instruction *232 was required; nor was the State required to make an election.
Affirmed.
We concur: SEINFELD, J., and HUNT, A.C.J.
NOTES
[1] Under this statute, "threat" means:

[T]o communicate, directly or indirectly the intent:
(a) To cause bodily injury in the future to the person threatened or to any other person; or
(b) To cause physical damage to the property of a person other than the actor; or
(c) To subject the person threatened or any other person to physical confinement or restraint; or
(d) To accuse any person of a crime or cause criminal charges to be instituted against any person; or
(e) To expose a secret or publicize an asserted fact, whether true or false, tending to subject any person to hatred, contempt, or ridicule; or
(f) To reveal any information sought to be concealed by the person threatened; or
(g) To testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or
(h) To take wrongful action as an official against anyone or anything, or wrongfully withhold official action, or cause such action or withholding; or
(i) To bring about or continue a strike, boycott, or other similar collective action to obtain property which is not demanded or received for the benefit of the group which the actor purports to represent; or
(j) To do any other act which is intended to harm substantially the person threatened or another with respect to his health, safety, business, financial condition, or personal relationships[.]
RCW 9A.04.110(25).
[2] This statute provides: "A person is guilty of assault in the first degree if he ... with intent to inflict great bodily harm: Assaults another and inflicts great bodily harm." RCW 9A.36.011(1)(c).
[3] "Great bodily harm" is defined as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ[.]" RCW 9A.04.110(4)(c).